No. 04-97-00413-CV



Vivian L. MCDOUGALL (fka Havlen),


Appellant



v.



Harold HAVLEN,


Appellee



From the 73rd Judicial District Court of Bexar County, Texas


Trial Court No. 96-CI-09069


Honorable Robert L. Eschenburg, Judge Presiding



Opinion by: Tom Rickhoff, Justice 


Sitting: Tom Rickhoff, Justice 

 Sarah B. Duncan, Justice

 Karen Angelini, Justice 


Delivered and Filed: September 9, 1998


REVERSED and REMANDED


 This case requires us to decide whether the Texas policy treating undivided community
property assets as tenancies in common is sufficient to satisfy the requirements of the federal
Uniformed Services Former Spouses Protection Act ("USFSPA"). Because we find that Texas law
does "treat" a military pension for purposes of USFSPA, we reverse and remand.

 Harold Havlen ("Havlen") joined the Air Force in 1952; he and Vivian McDougal
("McDougall") were married in 1953. He retired in 1972; the two were divorced in 1976. The
divorce decree inexplicably failed to apportion his pension, and there was no residuary clause. The
only asset mentioned in the decree was the couple's house, which was awarded to Havlen; he
testified he sold the house and split the proceeds with McDougall.

 In 1996, McDougall filed a petition to partition the "undivided asset," namely the military
retirement pay. Havlen moved for summary judgment based upon the pleadings alone, citing the
federal statutory bar to reopening divorce decrees prior to 1981, 10 U.S.C.A. § 1408(c)(1)(West
Supp. 1998), the limitations found in the Family Code, and on the equitable principles of estoppel
and laches. Tex. Fam. Code Ann. §§ 3.70(c), 3.90(c) and 3.91 (Vernon 1994)(now codified at Tex.
Fam. Code Ann. §§ 9.002, 9.202 and 9.203 (Vernon Supp. 1998)). The trial court granted summary
judgment without specifying a ground.

 In three points of error McDougall argues the trial court erred in granting summary judgment
because her claim is not barred by 10 U.S.C. § 1408(c)(1); because her cause of action is not barred
by Tex. Fam. Code Ann. §§ 3.70(c) and 3.90(c); and because her cause of action is not barred by
estoppel and laches.

Standard of Review


 The party moving for summary judgment has the burden of showing that no genuine issue
of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. p. 166a(c);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-549 (Tex. 1985). In deciding whether
a disputed material fact issue precludes summary judgment, the reviewing court will take as true all
evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged
in favor of the nonmovant, and any doubts will be resolved in his favor. Nixon, 690 S.W.2d at 549.


 A defendant who conclusively negates at least one of the essential elements of each of the
plaintiff's causes of action is entitled to summary judgment. Wornick Co. v. Casas, 856 S.W.2d
732, 733 (Tex. 1993). A movant may also prove entitlement to summary judgment by conclusively
proving all elements of an affirmative defense. Montgomery v. Kennedy, 669 S.W.2d 309 (Tex.
1984). Conversely, since the trial court did not specify on which ground it based its grant of
summary judgment, the summary judgment must be affirmed if any of the grounds advanced are
meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

 Havlen moved for summary judgment on the pleadings, without accompanying evidence.
We therefore take all facts, inferences and allegations in the pleadings as true and view them in the
light most favorable to McDougall. Havens v. Tomball Community Hospital, 793 S.W.2d 690, 691
(Tex. App.--Houston [1st Dist.] 1990, writ denied); Wood Truck Leasing v. American Auto. Ins.
Co., 526 S.W.2d 223, 224-225 (Tex. Civ. App.--San Antonio 1975, no writ).

Preemption


 Havlen first argues that McDougall's partition action is barred by federal law. We disagree.

 In Texas, upon entry of a divorce decree the former spouses hold any undivided community
property as tenants in common. Busby v. Busby, 457 S.W.2d 551, 554 (Tex. 1970). The proper
method for addressing an undivided asset is a partition suit. Id.; Harrell v. Harrell, 692 S.W.2d 876
(Tex. 1985). The court in such a partition suit has the power to divide the property in a manner that
the court deems just and right. Tex. Fam. Code Ann. § 3.91 (now codified at Tex. Fam. Code Ann.
§ 9.203(a) (Vernon 1998)).

 However, the power of Texas courts to apportion military retirement pay as part of the
community estate is circumscribed by federal statute. In McCarty v. McCarty, 453 U.S. 210 (1981),
the Supreme Court interpreted spendthrift language in military pension law to mean that Congress
had preempted the power of state courts to divide military pensions on divorce. Congress responded
by passing the United Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1988) which
granted a limited right to state family law courts to treat military retirement pay as community
property.

 Through various clauses of USFSPA, Congress sought to regulate its grant of jurisdiction
to community property states to divide military pensions. One of these clauses is at issue here:

 A court may not treat retired pay as property in any proceeding to divide or partition
any amount of retired pay of a member as the property of the member's spouse or
former spouse if a final decree of divorce, dissolution, annulment, or legal separation
(including a court ordered, ratified, or approved property settlement incident to such
decree) affecting the member and the member's spouse or former spouse (A) was
issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any
amount of retired pay of the member as property of the member and the member's
spouse or former spouse.

 10 U.S.C.A. § 1408(c)(1) (West Supp.1997). The purpose of the 1990 amendment is clearly
set forth:

 The committee is concerned because some state courts have been less than faithful
in their adherence to the spirit of the law [USFSPA]. The reopening of divorce cases
finalized before the Supreme Court's decision in McCarty v. McCarty that did not
divide retired pay continues to be a significant problem. Years after final divorce
decrees have been issued, some state courts, particularly those in California, have
reopened cases (through partition actions or otherwise) to award a share of retired
pay. Although congress has twice stated in report language that this result was not
intended, the practice continues unabated. Such action is inconsistent with the
notion that a final decree of divorce represents a final disposition of the marital
estate.

 H.R.Rep. No. 665, 101st Cong., 2d Sess. 279 (1990), reprinted in 1990 U.S.C.C.A.N. 2931,
3005.

 The question we face is whether Texas' practice "treat[s] (or reserve[s] jurisdiction to treat)"
of the pension for purposes of the federal statute.

 1. Prior Caselaw

 Two courts of appeals have addressed our issue and reached opposite conclusions.
Compare Walton v. Lee, 888 S.W.2d 604 (Tex. App.--Beaumont 1994, writ denied), cert. denied,
116 S.Ct. 190 (1995) with Knowles v. Knowles, 811 S.W.2d 709 (Tex. App.--Tyler 1991, no writ).

 In Knowles, the court confronted a 1975 divorce and undivided retirement benefits; it held,
without elaborating, that § 1408(c)(1) precluded an award of the community interest in a military
spouse's pension. Id. at 710. Its holding was also bottomed in an unambiguous residuary clause
which it held granted the entire pension to the military spouse. Id. at 711.

 In contrast, the Walton court, confronted with a 1976 divorce and undivided military benefits,
held that "under Texas law the courts automatically 'treat (or reserve jurisdiction to treat) any
amount of retired pay of the member' by virtue of the laws governing ownership of undivided
property, and subsequent partition is not precluded by federal law." Id. at 605 (quoting 10 U.S.C.
§ 1408(c)(1)). Because we do not have a residuary clause, we find Walton more applicable to the
task at hand.

 The Texas Supreme Court construed 10 U.S.C. § 1408(c)(1) in Buys v. Buys, 924 S.W.2d 369
(Tex. 1996). In that case, the court held that a general residuary clause which did not specifically
mention a pension was sufficient to "reserve jurisdiction to treat" the pension and satisfy the statute.
Buys, 924 S.W.2d at 372-373. The court found that the residuary clause in the divorce decree
encompassed the pension; therefore the pension was clearly treated as a matter of state contract law.
Id. at 373. The court noted that, in order to reach the conclusion that the residuary clause did not
"treat" the benefits in question for purposes of the federal statute, "Congress would have had to
intend that military retirement benefits the divorce decree already gave to a party years ago under
applicable state law were taken away by enactment of the statute." Id. (emphasis in original). It also
noted that such a construction would further the principle that in construing federal statutes, courts
should strive to leave state family law unaltered. Id. (citing Hisquierdo v. Hisquierdo, 439 U.S. 572,
581 (1979)).

 2. Application 

 Buys essentially held that an unambiguous residuary clause "treats" a military pension as a
matter of state contract law. Id. at 372-373. In the instant case we are faced not with a matter dealt
with by agreement of the parties, but of state property law operating in place of a residuary clause.
However, using the guidance provided by Buys and Walton, we determine that the operation of state
law, which converts an undivided asset into a tenancy in common, is indeed sufficient to "treat (or
reserve jurisdiction to treat)" an undivided military pension for purposes of the statute.

 First, Texas' historic practice of converting undivided community property into a tenancy
in common, like the divorce decree in Buys, creates a vested property right in the non-military
spouse as a matter of state law. And under state law, a cotenant in a tenancy in common has an
absolute right to partition.(1) See, e.g., Ware v. Ware, 809 S.W.2d 569, 571 (Tex. App.--San Antonio
1991, no writ). The Buys court grounded its decision in the theory that Congress did not mean to
interfere with property rights already vested by state law. We find that rationale applicable here,
even in the absence of an explicit residuary clause.

 Second, the Buys decision drew substantial support from a persuasive law review article
endorsing an exercise of jurisdiction by Texas courts in this situation. See Buys, 924 S.W.2d at 372;
William Reppy Jr., The 1990 U.S.F.S.P.A. Amendments: No Bar to Recognition of Tenancy in
Common Interests Created by pre-McCarty Divorces that Failed to Divide Military Retirement
Benefits, 19 Idaho. L. Rev. 941 (1992). Indeed, even while purporting to reserve judgment on the
question we face today, the Buys court cited to this passage of Reppy's article:

 By converting a community interest in military retirement benefits into tenancy in
common, a court certainly "deals with" the military property. There is no less
"treating" or "dealing with" because the judge is not aware of the community assets
not brought to the court's attention that are converted into tenancy-in-common
properties. Employing the definition of the Texas court rather than that of Louisiana
. . . more closely achieves the end desired by Congress.

19 Idaho L.Rev. at 961 (footnotes omitted) (cited in Buys, 924 S.W.2d at 375).

 Third, as Reppy points out, conversion into a tenancy in common does indeed change the
nature of the asset. If a divorce decree explicitly converted the community interest to a tenancy in
common, with its attendant changes in management powers and ownership, there could be no doubt
that the court had "treated" the asset for purposes of the statute. See U.S.F.S.P.A. Amendments, 29
Idaho L. Rev. at 949. This court has previously defined "treat" to as "to deal with a matter or
subject." Southern v. Glenn, 677 S.W.2d 576, 582 (Tex. App.--San Antonio 1984, writ ref'd n.r.e.).
We believe this conversion fits the definition of "treat" for purposes of the statute.

 In sum, because we believe Congress did not intend to interfere with preexisting property
rights, we hold that 1408(c)(1) does not bar McDougall's suit to partition the community property
portion of the military pension. Therefore summary judgment on this ground would have been
improper. We now look to see if the Texas Family Code bars McDougall's action.

Statutory Provisions 


 The partition of undivided community assets is governed by Chapter 3 of the Texas Family
Code. See Tex. Fam. Code Ann. § 3.91 (Vernon 1994)(now codified at Tex. Fam. Code Ann. §
9.203 (Vernon Supp. 1998)). We now turn to the question of whether McDougall's petition for
division of the pension is barred by this subchapter.

 Havlen argues that the two-year statute of limitations contained in section 3.70(c) of the
Family Code (now codified at Tex. Fam. Code Ann. § 9.003) bars McDougall's action. We find
that the plain language of this section defeats Havlen's argument.

 Another section of the statute states that "[t]he procedures and limitations provided by this
subchapter do not apply to existing property not divided on divorce and thereby held by the ex-spouses as tenants in common." Tex. Fam. Code Ann. § 3.70(d) (now codified at Tex. Fam. Code
Ann. § 9.004). Because this is a suit to partition existing property not divided on divorce and held
by the spouses as tenants in common, summary judgment on McDougall's claim based on this
statute would be improper.

 Secondly, summary judgment based on section 3.90(c) would have been improper because
Havlen did not use it as a defense to McDougall's entire cause of action; instead, he asserted it as
a defense against liability for payments received by him prior to June 21, 1994 (two years before
McDougall filed suit). In any case, we find no evidence in the record showing an unambiguous
repudiation by Havlen of McDougall's interest in his pension, or of his communication of that
unambiguous repudiation to McDougall. Therefore summary judgment on this ground would have
been improper.

 Having determined that none of the Family Code's provisions block McDougall's suit, we
now turn to Havlen's common-law defenses.

Estoppel and Laches


 Finally, Havlen seeks to assert estoppel and laches as a defense against McDougall's claim.
He contends that "equity demands . . . that after this long a period of time, the Court should leave
the parties as it finds them." However, a party moving for summary judgment on an affirmative
defense bears the burden of conclusively establishing every element of that affirmative defense. 
Montgomery, 669 S.W.2d at 314. This Havlen has failed to do.

 To establish the defense of laches, for example, a party must show unreasonable delay by one
having legal or equitable rights in asserting those rights, and a good faith change of position by
another to his detriment because of that delay. Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.,
704 S.W.2d 101, 106 (Tex. App.--Dallas 1985, no writ). Although one could infer that over the
course of twenty years Havlen often changed position in good-faith reliance on his continued receipt
of full pension benefits, he did not supply evidence of this with his motion. Moreover, we indulge
every inference in favor of the nonmovant, not the movant. Nixon, 690 S.W.2d at 549. Therefore
we find summary judgment on this ground to be without support.

 Similarly, the doctrine of equitable estoppel requires: (1) a false representation or
concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3)
with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining
knowledge of the facts; (5) who detrimentally relies on the representations. Schroeder v. Texas Iron
Works, Inc. 813 S.W.2d 483, 489 (Tex. 1991). Again, Havlen did not establish this defense with
evidence. Therefore summary judgment on this ground is also without support.

Conclusion


 Because there was no evidence attached to his motion, we find that none of the grounds
presented by Havlen will support a motion for summary judgment. Therefore, the judgment of the
trial court is reversed and the cause remanded for proceedings consistent with this opinion.


 Tom Rickhoff, Justice 

PUBLISH


1. However, the parties may limit this right by agreement, and courts will enforce such agreements. See 57 Tex.
Jur. 3d Partition § 18 (1997).


Return to
4th Court of Appeals Opinions